[Civ. No. 8162.  Third Dist.  Nov. 5, 1952.]

GARLAN EPLEY, Respondent, v. ELMER RAY
INGERSOLL et al., Appellants.

Rich, Carlin & Fuidge for Appellants.

Francis M. Arnoldy and Heenan & Arnoldy for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff commenced an action against defendants upon a promissory note executed by defendants in favor of plaintiff's assignor. Defendants Elmer Ray Ingersoll and Emma Ingersoll, his wife, were copartners doing business under the firm name and style of Ingersoll Lumber Company. On May 10, 1949, at Marysville, California, defendants gave plaintiff's assignors, Arthur D. Mervin and Rebecca Mervin, his wife, a promissory note for $6,000, payable in $1,000 monthly installments commencing July 1, 1949, with a certain grace period allowed for payment of the last two installments. The note was given in consideration for and in connection with an agreement between defendants and plaintiff's assignors, the Mervins, also dated May 10, 1949, which superseded a previous agreement between the parties,

under which agreement of May 10, 1949, defendants agreed to purchase all the merchantable timber of specified size and variety located on a certain 480 acres of real property owned by the Mervins and situated in Yuba County, California. The agreement contained the proviso:

''Should it develop during the overall operations that there is more than five per cent of loss due to overripe trees there shall be an adjustment made at that time between the parties hereto. In case the parties cannot agree upon a reasonable adjustment to be made in case one should have to be made as provided herein, then they shall submit the matter to arbitration. Each party shall select one person and the two so selected shall name a third disinterested person, and the decision of the majority shall be binding upon the parties hereto.''

The complaint alleged that only $2,960 had been paid on the note and sought judgment for the balance of $3,040, interest, and the sum of $450 attorney's fees. Defendants in their answer set up a separate defense in which they alleged that the percentage of overripe and unmerchantable trees was more than 50 per cent; that they had sought an adjustment which had been refused by plaintiff; that the consideration for said note had therefore failed to the extent of $3,040, the balance due on the said note; and that plaintiff was not entitled to recover thereon.

The case was tried by the court sitting without a jury. The principal and in fact the only issue at the trial was the amount of timber which was unmerchantable because overripe or rotten. Expert testimony and other testimony was presented by both parties, and the evidence was highly conflicting. The trial court found that defendants were entitled to an allowance of $600 for overripe timber over and above the 5 per cent tolerance allowed by the contract. This reduced the unpaid balance on the note from $3,040 to $2,440, for which plaintiff recovered judgment, together with $450 attorney's fees. Defendants' motion for a new trial was denied and they have appealed from the judgment and from the order denying their motion for a new trial.

Appellants make a vigorous attack upon the sufficiency of the evidence to support the judgment. They make an extensive listing of the results of the cruise of standing trees and fallen logs which their expert had made, and which showed a 58.6 percentage of sound logs and trees, and a 41.4 percentage of overripe trees and logs. From this, appellants argue that they should be ''relieved from further payments under the note

because of the failure of consideration for which the note was executed [large percentage of overripe trees and logs existent at date of execution of contract constituting the failure], it being a well recognized fact that such a large percentage of unmerchantable timber on any property is not profitable to cut and plaintiff's assignor in all fairness should not be permitted to further profit from such a contract.'' However, appellants suggest that if adjustment is to be made as provided in the contract, then their percentage figures would show a balance remaining due and unpaid of only $556. Appellants dismiss the testimony of respondent's expert timber cruiser as being too vague because he used a sample area, he could not state the precise section wherein he took his sampling, his cruise was based upon a stumpage examination which may have included stumps smaller than the prescribed 20 inches and may have included stumps from logging operations previous to this one. Appellants argue that the cruise made by their timber expert was a more complete and representative survey because it covered a greater area and covered standing and fallen timber, instead of just the stumps of what had already been cut.

Respondent in reply points out that appellants have removed all of the merchantable timber from the property in question, and that respondent's expert testified to finding a loss factor of only 2.46 per cent and that the percentage of unmerchantable timber was well within the 5 per cent tolerance allowed by the contract. Respondent also goes into some of the background of previous dealings between the Mervins and appellants which resulted in the agreement of May 10, 1949, but that would not appear to be here relevant. Respondent also devotes considerable discussion to disproving the mathematics employed by appellants' expert. As for the assertion that respondent's expert did not know the precise section of land wherein he took his sampling, respondent quotes the trial court's comment as establishing that the sampling was done on the correct property: ''They pointed out the area and the witness on the stand made a misdescription. The fact that you asked him about 11 and 12 isn't going to affect the situation. As I understand it, they identified the property in question in each instance as the property in dispute here. These witnesses said that they didn't even know the name of the section, in response to your questions. He did say 11 and 12, nevertheless in the beginning he said he.

didn't even know which section it was or township or range. All he knew was that it was this Mervin property.''

Appellant's argument upon the question of the sufficiency of the evidence is but an argument as to the weight of conflicting evidence. ▮ Issues of fact must be determined by the trial court and an appellate tribunal is bound by the familiar rule that before it can be justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that accepting the full force of the evidence, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such party from recovering a judgment.

Applying this rule to the instant case it is clear that the record amply supports the judgment. If the judgment had been in favor of appellants their argument would be very helpful in pointing out evidence supporting such a judgment, but in view of the adverse judgment the testimony pointed out and relied upon by appellants merely accentuates the conflict in the testimony, which conflict it was the function of the trial court to resolve. The trial court, first in its findings and judgment, and again in denying appellants' motion for a new trial, resolved this conflict against appellants, and this finding, based as it is upon conflicting evidence, is binding upon us.

Appellants in their typed argument, filed after the oral argument, for the first time argue that the sum of $450 allowed by the court as attorney's fees is excessive. There is no merit in this contention. The promissory note provided for attorney's fees in the event of a suit upon the note, and there is nothing in the record to indicate that the amount allowed by the trial court was excessive.

In view of the foregoing the judgment is affirmed and the appeal from the order denying the motion for a new trial is dismissed.

Peek, J., and Van Dyke, J., concurred.